UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD JONES INVESTMENTS, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SACRAMENTO, et al., <br><br> Defendants. | No. 2:15-cv-0954-DAD-DB <br><br> ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT <br><br> (Doc. No. 75) |

This matter is before the court on defendants' August 10, 2023 motion for leave to file an amended answer to plaintiffs' second amended complaint. (Doc. No. 75.) On September 7, 2023, the pending motion was taken under submission on the papers. (Doc. No. 79.) For the reasons explained below, defendants' motion will be granted.

**BACKGROUND**

On November 6, 2022, plaintiffs Howard Jones Investments, LLC ("HJI"), Lowella Oldham, Dolly Leeper, Ada Leeper, Ericka Ward, and Alonzo Medley filed the operative second amended complaint ("SAC") in this action brought against defendants City of Sacramento ("defendant City"), City of Sacramento Police Department, police officer Matt Armstrong, senior deputy city attorney Michael Benner, and chief of police Sam Somers, Jr. (Doc. No. 73.)

/////

In their SAC, plaintiffs allege the following. Plaintiff HJI is a limited liability company ("LLC") that owned a three-unit dwelling in Sacramento ("the Robles Property"). (*Id.* at ¶¶ 5–6.) Plaintiffs Oldham, Ward, Medley, Dolly Leeper, and Ada Leeper ("the individual plaintiffs") are former tenants of the Robles Property. (*Id.* at ¶¶ 7–11.) The Sacramento Social Nuisance Code is a municipal code that identifies nuisances and permits the defendant City to compel property owners to perform mitigation actions. (*Id.* at ¶ 31.) Despite the Social Nuisance Code containing no provisions permitting the defendant City to compel evictions, defendants had an unwritten policy of assessing penalties against property owners under the Social Nuisance Code and then using the penalties to pressure the property owners into immediately evicting disfavored tenants. (*Id.* at ¶ 34.) In 2014, defendants threatened plaintiff HJI with a $25,000 penalty unless it immediately evicted the individual plaintiffs. (*Id.* at ¶¶ 47–48.) After plaintiff HJI failed to evict the individual plaintiffs within three days, defendant Armstrong issued plaintiff HJI a citation for $4,999.99. (*Id.* at ¶ 48.) After the individual plaintiffs were eventually evicted, all of them found it difficult to find housing, several lost their jobs, some were forced to live in their cars, and one is still homeless. (*Id.* at ¶¶ 57–67.) Plaintiff HJI sold several properties, including the Robles Property, at fire sale prices to avoid the threatened monetary penalties and harassment from defendants and because the idea of engaging in arbitrary eviction to lawful paying tenants at defendants' behest was offensive. (*Id.* at ¶ 68.)

Based on the above allegations, plaintiff HJI asserts the following claims in the SAC[1]: (1) deprivation of property without due process of law in violation of 42 U.S.C. § 1983 and the Fifth Amendment; (2) denial of the equal protection of the laws in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; and (3) tortious interference with contractual relationships. (*Id.* at ¶¶ 85–105.)

On November 21, 2022, defendants filed their answer to plaintiffs' SAC. (Doc. No. 74.) On August 10, 2023, defendants filed the pending motion, requesting the court's permission to

---

[1] While not relevant for purposes of resolving the pending motion, the individual plaintiffs also assert a claim for violation of their rights to privacy and due process of law, brought pursuant to 42 U.S.C. § 1983 and the Fifth Amendment. (*Id.* at ¶¶ 78–84.)

amend their answer to assert an affirmative defense against plaintiff HJI. (Doc. No. 75-1.) Defendants argue that, in May 2023, plaintiffs produced in discovery a copy of "a Certificate of Cancellation" filed by plaintiff HJI with the California Secretary of State stating that all of its "powers, rights and privileges will cease in California" on May 15, 2018. (*Id.* at 2.) Consequently, defendants argue, because canceled LLCs may not sue or be sued, and because plaintiff HJI's cancellation was not made known to defendants until after they had filed their answer to the SAC, the court should permit defendants to amend their answer to include an affirmative defense on the grounds that plaintiff HJI is barred from bringing this suit against defendants. (*Id.* at 2–3.) On August 24, 2023, plaintiff HJI filed its opposition to the motion. (Doc. No. 76.) In its opposition brief and attachments thereto, plaintiff HJI concedes that it was "terminated" in 2018 but argues that leave to amend should nevertheless be denied to defendants due to the futility of the proposed amendment, defendants' undue delay and bad faith in bringing the pending motion, and the undue prejudice to plaintiff HJI that would result if amendment were permitted. (Doc. Nos. 76 at 3–5; 76-1 at ¶ 2.) Defendants filed their reply to plaintiff HJI's opposition brief on September 1, 2023. (Doc. No. 77.)[2]

## LEGAL STANDARD

"A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). Otherwise, a party must seek leave of court to amend a pleading or receive the opposing party's written consent. *Id.*

"A district court shall grant leave to amend freely when justice so requires. . . . [T]his policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation marks and citations omitted). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or

---

[2] Plaintiff HJI also filed an unauthorized sur-reply on September 5, 2023. (Doc. No. 78.) The court does not rely on the unauthorized sur-reply in resolving this motion, though the court also notes that its analysis would be unchanged even were it to consider the sur-reply.

1 | dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments
2 | previously allowed, undue prejudice to the opposing party by virtue of allowance of the
3 | amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma*
4 | *Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
5 | Of these factors, "prejudice to the opposing party carries the most weight." *Brown v. Stored*
6 | *Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). "Generally, this determination should be
7 | performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*,
8 | 170 F.3d 877, 880 (9th Cir. 1999).

**ANALYSIS**

**A.   Futility**

"An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted).

Defendants argue that their proposed amendment would not be futile because plaintiff HJI filed a certificate of cancellation on May 15, 2018, rendering it incapable of bringing suit. (Doc. No. 75-1 at 4 (citing Cal. Corp. Code § 17708.08); *see also* Doc. No. 75-2 at ¶ 4.) In its opposition, plaintiff HJI argues that amendment of defendants' answer would be futile because new articles of organization have already been filed, mooting the issue of whether it lacks the capacity to sue or be sued. (Doc. No. 76 at 4.) Plaintiff HJI further argues that because a corporation is a "person" for purposes of the Fourteenth Amendment, and because a person's claim is not subject to dismissal simply because the person dies, then a corporation's claim is not subject to dismissal simply because the corporation "ceases to do business." (*Id.* at 4–5.) Lastly, while plaintiff HJI's argument on this point is not entirely clear, the court construes it to be arguing that the proposed amendment would be futile because the individual Paul Howard is the alter ego of plaintiff HJI, such that Howard may be substituted as a plaintiff and bring plaintiff HJI's claims in its place. (*See id.* at 5) ("Paul Howard is the sole managing member of the LLC and essentially the person bringing the claim. The difference between HJI where Paul Howard is the sole managing member and Paul Howard [is the] sole proprietor is only corporate formalities

4

and liability exposure."). In their reply, defendants argue that forming a new corporation with the same name five years after terminating the first corporation cannot cure plaintiff HJI's lack of capacity to sue. (Doc. No. 77 at 3.)

An LLC's capacity to sue or be sued is determined "by the law of the state where the court is located," which in this case is California. Fed. R. Civ. P. 17(b)(3). Under California law, "[u]pon filing a certificate of cancellation . . . a limited liability company shall be canceled and its powers, rights, and privileges shall cease," including its power to sue and be sued, "except as provided in Section 17707.06 . . . ." Cal. Corp. Code § 17707.08(c). That section provides in relevant part that an LLC "that has filed a certificate of cancellation nevertheless continues to exist for the purpose of winding up its affairs, [and for] prosecuting and defending actions by or against it in order to collect and discharge obligations . . . ." Cal. Corp. Code § 17707.06(a). It also provides that "[n]o action or proceeding to which [an LLC] is a party abates by the filing of a certificate of cancellation . . . ." Cal. Corp. Code § 17707.06(c).

The court is reluctant to find at this time that defendants' proposed amendment would be futile. Neither plaintiff nor defendants have cited or discussed § 17707.06's exception detailing when a canceled LLC may still sue. Neither side has offered any arguments as to whether plaintiff HJI's action is one "for the purpose of winding up its affairs" or one "to collect and discharge obligations," such that the action is permitted. *See* Cal. Corp. Code § 17707.06(a); *cf. Force v. Advanced Structural Techs., Inc.*, No. 20-cv-02219-DMG-AGR, 2020 WL 4539026, at *4 (C.D. Cal. Aug. 6, 2020) (noting that "[i]f a cancelled LLC can 'continue to exist' for purposes of winding up, the inverse inference is that it ceases to exist for all other purposes"). Nor has any party offered any argument regarding the possible interplay between subsections (a) and (c) of § 17707.06. In light of the lack of meaningful arguments advanced by the parties addressing the relevant issues and statutes, the court cannot conclude that "no set of facts" can be proved under defendants' proposed amendment that would constitute a sufficient defense. *Koster*, 847 F.3d at 656 (citation omitted). As a result, the court finds that at this time amendment of the answer cannot be said to be futile.

/////

1 **B.     Undue Delay**

2     Defendants argue that the proposed amendment would not cause undue delay because there is currently no trial date, no scheduling order, and no deadline for amendments to the pleadings in this action.  (Doc. No. 75-1 at 3.)  In response, plaintiff HJI argues that undue delay may nevertheless be present despite the absence of a pretrial scheduling order.  (Doc. No. 76 at 3.)  Plaintiff HJI further argues that defendants "either knew or should have known" that it was "terminated" in 2018, four years before defendants filed their answer in November 2022, because the status of every business is a public record available on the California Secretary of State website.[3]  (Doc. Nos. 76 at 3; 76-1 at ¶ 2.)  In reply, defendants argue that they did not learn of plaintiff HJI's "defunct status" until it was revealed in discovery in June 2023, whereas plaintiff HJI failed to disclose its canceled status to the court or to defendants when it filed the SAC in November 2022.  (Doc. No. 77 at 3.)

    The court concludes that consideration of the factor of undue delay weighs in favor of granting defendants leave to file an amended answer.  Plaintiff HJI has offered no authority suggesting that a party is obliged to regularly check public records to ensure that each corporate opposing party has not filed a certificate of cancellation, nor does the court find such an argument persuasive.  When they filed their original answer in 2022, defendants had little reason to suspect that plaintiff HJI had been "terminated" in 2018, especially given that plaintiff HJI had just filed its SAC two weeks earlier.  (*See* Doc. Nos. 64, 73.)  Defendants discovered the purported grounds for amending their answer in June 2023, requested plaintiffs' consent to their proposed amendment in July 2023, and filed the pending motion in August 2023.  (*See* Doc. No. 76-1 at ¶ 4.)  The court concludes consideration of the undue delay factor tips in defendants' favor.  *See Owens*, 244 F.3d at 712 (finding no undue delay where the defendant "moved to amend [its answer] as soon as it became aware of" the grounds for amendment).

/////

---

[3]  The court construes plaintiff HJI's argument regarding what defendants "should have known," appearing primarily in the section of its brief concerning the undue prejudice factor, to also apply to the undue delay factor.  (*See* Doc. No. 76 at 3, 5.)

### C. Bad Faith

The parties' arguments concerning the bad faith factor are largely duplicative of their arguments addressing undue delay. (*See* Doc. Nos. 75-1 at 3–4; 76 at 4.) Considering these repetitive arguments only, the court concludes that the bad faith factor weighs in favor of permitting amendment for the reasons discussed above.

The court does observe that it is uncertain whether plaintiff HJI's argument regarding defendants' "failure to meet and confer in good faith" is also intended to address the bad faith factor. (*See* Doc. No. 76 at 4.) Plaintiff HJI argues that defendants' counsel "refrained from responding" to its argument that "reviv[ing] the business" would cure any deficiency related to its ability to bring suit. (*Id.*) Instead, plaintiff HJI states, defendants "simply proceeded to file the instant motion a few days later." (*Id.*; *see also* Doc. No. 76-1 at ¶¶ 4, 5.) However, in the court's view, plaintiff's argument regarding the speed with which defendants acted actually cuts against a finding of bad faith. *See Owens*, 244 F.3d at 712 (holding that the district court did not clearly err in finding that the defendant did not act in bad faith where the defendant moved to amend its answer "[i]mmediately upon learning of the availability of the" grounds for amendment and where the defendant's counsel "offered a credible explanation for his belated discovery" of those grounds); *Brown*, 953 F.3d at 574 ("There is also no indication of undue delay, bad faith, or dilatory motive by Brown: . . . Brown has not repeatedly failed to cure deficiencies. Rather, Brown sought leave to amend based on newly discovered evidence.").

As a result, the court finds that consideration of bad faith supports permitting amendment.

### D. Undue Prejudice

Defendants argue that the proposed amendment is not prejudicial to plaintiffs due to the same reasons that it would not cause undue delay, namely because there is currently no trial date, no scheduling order, and no deadline for amendments to the pleadings established in this case. (Doc. No. 75-1 at 3.) Plaintiff HJI again argues that defendants "should have been aware of HJI's status when filing a responsive answer in November of 2022." (Doc. No. 76 at 5.) Considering these repetitive arguments only, the undue prejudice factor weighs in favor of permitting amendment for the same reasons discussed above.

7

Plaintiff HJI also argues that defendants purposely delayed filing this motion in order to increase plaintiffs' litigation costs. (*Id.*) However, because the court has already found that defendants did not delay filing their motion in bad faith, plaintiff HJI's argument on this point is unavailing. *See Owens*, 244 F.3d at 712 ("While we agree that delaying assertion of an affirmative defense for the purpose of forcing a party to incur unnecessary expenses would demonstrate bad faith, there is no evidence that [the defendant] acted with such a purpose. Appellants have [therefore] failed to demonstrate that the district court clearly erred in finding that [the defendant's] amendment was not prejudicial.").

In sum, consideration of all the *Foman* factors weighs in favor of permitting amendment of the answer here. Therefore, considering the Ninth Circuit's policy of extreme liberality, the court will grant defendants' motion.[4]

**CONCLUSION**

For the reasons explained above,

1. Defendants' motion for leave to file an amended answer to plaintiffs' second amended complaint (Doc. No. 75) is granted;

---

[4] Within fourteen (14) days of the date of entry of this order, all parties shall submit a joint status report that includes the Rule 26(f) discovery plan and addresses the following matters: (1) a brief summary of the claims and legal theories under which recovery is sought or liability is denied; (2) status of service upon all defendants and cross-defendants; (3) possible joinder of additional parties; (4) contemplated amendments to the pleadings; (5) the statutory bases for jurisdiction and venue; (6) contemplated motions and a proposed date by which all non-discovery motions shall be heard; (7) methods to avoid cumulative evidence, and anticipated limitations on the use of testimony under Federal Rule of Evidence 702; (8) a proposed date for final pretrial conference; (9) a proposed date for trial, estimated number of days of trial, and whether any party has demanded a jury; (10) appropriateness of special procedures such as reference to a special matter or agreement to try the matter before a magistrate judge; (11) proposed modification of pretrial procedures due to the case's simplicity or complexity; (12) whether the case is related to any other pending in this district; and (13) optimal timing and method for settlement discussions. The joint status report shall also address the scheduling of discovery, including: (1) any proposed changes in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made, and whether further discovery conferences should be held; (2) the subjects on which discovery may be needed and when it should be completed; (3) any proposed changes to the limits on discovery imposed under the Civil Rules; (4) the timing of the disclosure of expert witnesses and information required by Rule 26(a)(2); and (5) proposed dates for discovery cut-off. All named parties shall participate in the preparation and completion of the joint status report.

2. Defendants shall file an amended answer to plaintiffs' second amended complaint no later than seven (7) days from the date of entry of this order;

3. The parties shall file a joint status report regarding scheduling as described in footnote 4, *supra*, no later than fourteen (14) days from the date of entry of this order; and

4. The court sets this case for a status conference regarding scheduling on March 26, 2024 at 1:30 p.m. before Judge Drozd, to be held by Zoom only. Parties will receive a Zoom ID number and password for the conference by email from Judge Drozd's Courtroom Deputy Pete Buzo (PBuzo@caed.uscourts.gov).

IT IS SO ORDERED.

Dated: **February 20, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE