UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD JONES INVESTMENTS, LLC, et al., | No.  2:15-cv-00954-DAD-SCR |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT |
| CITY OF SACRAMENTO, et al., | |
| Defendants. | (Doc. Nos. 99, 100) |

This matter is before the court on the parties' cross-motions for summary judgment which were filed on April 14, 2025.  (Doc. Nos. 99, 100.)  On April 29, 2025, the pending motions were taken under submission on the papers pursuant to Local Rule 230(g).  (Doc. No. 105.)  For the reasons explained below, the court will grant defendants' motion for summary judgment (Doc. No. 99) and will deny plaintiffs' cross-motion for summary judgment (Doc. No. 100).

**BACKGROUND**

This case arises from a dispute over a municipal nuisance abatement proceeding brought against plaintiff Howard Jones Investments, LLC ("plaintiff Howard Jones") in 2014 and 2015 which plaintiffs contend led to the evictions of plaintiffs Lowella Oldham, Ada Leeper, Dolly Leeper, Ericka Ward, and Alanzo Medley ("the residential plaintiffs") from a three-unit apartment building located on Los Robles Boulevard ("the subject property").

1

A.     **Factual Background**[1]

In 2014, plaintiff Howard Jones owned the subject property located in Sacramento. (DSUF ¶ 1.)  In 2014, plaintiffs Leeper and Oldham were residents of the subject property, had signed lease agreements for that property, and were evicted from that property pursuant to unlawful detainer actions.  (*Id.* at ¶¶ 5, 7, 8.)  Plaintiff Medley lived at the subject property, though plaintiff Medley did not sign a rental agreement and the property manager of the subject property does not recall having leased to him, and subsequently moved out when an unknown sheriff knocked on his door and told him that he had to leave.  (*Id.* at ¶¶ 9–11, 14.)  Plaintiff Ward possibly lived at the subject property, but counsel for both parties appear to be unable to confirm this because plaintiffs' counsel has been unable to locate plaintiff Ward.  (*Id.* at ¶ 15.)

Sacramento City Code 1.28.010 provides for the imposition of administrative penalties to protect the public health, safety, and welfare of Sacramento.  (*Id.* at ¶ 28.)  The structure for those penalties as to abating nuisances on privately-owned property is created by the Sacramento City Social Nuisance Code.  (*Id.* at ¶ 30; PSUF at ¶ 3.)  On or about June 5, 2014, defendant Matt Armstrong, a sergeant with the Sacramento Police Department, provided plaintiff Howard Jones with a "Notice of Public Nuisance Activity" informing plaintiff Howard Jones that nuisance activities were occurring at the subject property.  (DSUF at ¶ 31.)  That notice requested that the owners of the subject property contact defendant Sergeant Armstrong to schedule a meeting with the City Attorney's Office to develop a nuisance abatement strategy.  (*Id.* at ¶ 35.)  On July 7, 2014 and July 12, 2014, defendant Armstrong sent two emails to the property manager of the subject property expressing pleasure at learning that certain residents of the subject property were being evicted and expressing his belief that evictions can solve "problems similar to what we are dealing with on your property."  (*Id.* at ¶ 125; Doc. No. 104-3 at 233.)  On or about August 18, 2024, defendant Armstrong issued an administrative penalty to plaintiff Howard Jones in the

/////

---

[1]  This factual background is undisputed, except where otherwise noted, and is derived from the undisputed facts as stated by defendants and as responded to by plaintiffs (Doc. No. 104-1 ("DSUF")); the undisputed facts as stated by plaintiffs and responded to by defendants (Doc. No. 103-2 ("PSUF")); as well as the exhibits attached to the pending motions.

amount of $4,999.99, on the grounds that the subject property was a continued nuisance. (PSUF at ¶ 30.)

Neither party contends that defendant Sergeant Armstrong, or any police officer, assisted with a physical eviction of the residential plaintiffs. Plaintiffs did not submit any government tort claim to defendant City of Sacramento with respect to the injuries alleged in this action. (DSUF at ¶ 52.)

**B.    Procedural Background**

On May 3, 2015, plaintiff Howard Jones filed the complaint initiating this civil action. (Doc. No. 1.) On October 30, 2015, the previously-assigned district judge granted defendants' motion to dismiss in part and, on November 19, 2015, plaintiff Howard Jones and the residential plaintiffs filed their first amended complaint ("FAC"). (Doc. Nos. 23, 27.) On April 21, 2016, the previously-assigned district judge granted in part defendants' motion to dismiss the FAC and stayed certain claims pending the resolution of a related state proceeding. (Doc. No. 43.) On April 26, 2022, the previously-assigned district judge lifted the stay on these proceedings. (Doc. No. 66.) On August 25, 2022, this action was reassigned to the undersigned. (Doc. No. 70.)

On November 6, 2022, plaintiffs filed their second amended complaint ("SAC") against defendants Armstrong, City of Sacramento, City of Sacramento Police Department, Michael Benner, and Sam Somers Jr. (Doc. No. 73.) In that SAC, plaintiffs assert the following four claims against one or more of the defendants: (1) a 42 U.S.C. § 1983 claim for deprivations of due process and privacy interests in violation of the Fourth and Fourteenth Amendments resulting in eviction by the residential plaintiffs brought against all defendants[2]; (2) a 42 U.S.C. § 1983 claim for deprivation of property interests in violation of the Fifth Amendment brought by

/////

/////

/////

---

[2] Because some defendants are municipal entities, the court will analyze this claim separately below as a § 1983 claim against an individual and a § 1983 claim against a municipal entity pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

3

plaintiff Howard Jones against all defendants[3]; (3) a 42 U.S.C. § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment brought by all plaintiffs against all defendants; and (4) a state law claim for tortious interference with contractual relationships brought by all plaintiffs against all defendants.  (*Id.* at ¶¶ 78–105.)

On April 14, 2025, defendants filed their pending motion for summary judgment and plaintiffs filed their pending cross-motion for summary judgment.  (Doc. Nos. 99, 100.)  On April 28, 2025, plaintiffs and defendants filed their respective oppositions.  (Doc. Nos. 103, 104.)  On May 7, 2025, plaintiffs filed their reply and on May 8, 2025, defendants filed their reply.  (Doc. Nos. 108, 109.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or (2) showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  The court may consider other materials in the record, even if not cited by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

When resolving cross-motions for summary judgment, the court has an "independent duty to review each cross-motion and its supporting evidence . . . to determine whether that evidence

---

[3]  Plaintiffs describe this claim in its title as a due process claim, but in the body of their SAC refer to defendants' actions as instead constituting a taking without just compensation.  (*See* Doc. No. 73 at 26, ¶ 90.)  Plaintiffs do not clarify in their briefing on the pending motions whether their claim is brought for violation of due process or for violation of the takings clause.  The court analyzes this claim below as a claim brought pursuant to the takings clause.

4

demonstrates a genuine issue of material fact." *Fair Hous. Council of Riverside County., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001).  Therefore, each motion is evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (citation omitted).  If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  However, when the non-moving party will bear the burden of proof on an issue, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (stating that when the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); Fed. R. Civ. P. 56(c)(1)(B).  Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr*, 285 F.3d at 773 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing

party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

## DISCUSSION

### A.    Residential Plaintiffs' 1983 Claims

Defendants move for summary judgment in their favor as to each of the residential plaintiffs' claims brought pursuant to § 1983.[4]  (Doc. No. 99-1 at 12–28.)  As to the residential

---

[4]  Because plaintiffs' claims for violation of the Fourth and Fourteenth Amendments are both based upon their eviction allegedly without due process of law, "the Fourth and Fourteenth Amendment inquiries are, for all relevant purposes, the same." *Meyers v. Redwood City*, 400 F.3d 765, 770–71 (9th Cir. 2005) (observing that both inquiries require that the plaintiffs show that the defendants, under color of state law, seized property either without due process of law or unreasonably).  Accordingly, the court analyzes these claims together.

plaintiffs, defendants argue that plaintiffs have not identified a cognizable property interest that defendants purportedly deprived them of. (*Id.* at 13–14.) Moreover, defendants argue that there is no genuine issue of material fact that the evictions which are at issue in this case were not state action and that, accordingly, there was no requisite action taken "under color of state law" as required for a cognizable § 1983 claim. (*Id.* at 18–19.) Plaintiffs respond by arguing that defendants' Nuisance Code creates a cognizable property or liberty interest in specific procedures. (Doc. No. 104 at 8.) Further, plaintiffs contend that defendants sending letters to the landlord plaintiff regarding administrative nuisance abatement penalties and making "informal recommendations" to avoid such penalties constituted coercion. (*Id.* at 10–12.) Plaintiffs argue that this coercion was the moving force behind the evictions of the residential plaintiffs and amounted to state action as required for a claim under § 1983. (*Id.*) Below, the court will address whether there is any genuine dispute of material fact based upon the evidence before the court on summary judgment as to whether defendant Armstrong took any action under the color of state law and whether the alleged actions of the remaining defendants were a moving force behind the evictions.

      1.      Defendant Armstrong

Defendants argue that plaintiff has failed to produce sufficient evidence to create a genuine dispute of material fact regarding whether defendant Armstrong's actions were taken under the color of state law. (Doc. No. 99-1 at 18–19.) Specifically, defendants contend that defendant Armstrong took no direct actions to physically evict the residential plaintiffs nor to require their eviction and therefore his actions cannot be found to be the proximate cause of those evictions. (*Id.*) Plaintiffs concede that their eviction was pursued by plaintiff Howard Jones Investments, but argue that the eviction was the result of defendant Armstrong's coercive behavior. (Doc. No. 104 at 10–12.)

"In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (internal citation omitted). Where, as here, the defendants are

state officials or entities, "[i]f the actions of the state officers are not the proximate cause of the plaintiff's injuries, then there is no state action." *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1356 (9th Cir. 1981). As the Ninth Circuit has previously explained:

> The "state action" doctrine in repossession and other self-help remedies has been a complicated area of law. Many of the cases have focused on whether or at what point a private party employing a self-help remedy has assumed the mantle of the state and can be held to answer under [§] 1983 for violating the debtor's constitutional rights. This case presents the flip side to those cases: At what point have the police become so entangled in a private self-help remedy that they may be held to answer under [§] 1983?

*Meyers*, 400 F.3d at 771 (internal citations omitted).

"[I]t is generally not a constitutional violation for a police officer to enforce a private entity's rights." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). Nevertheless, "[a]t some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action." *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983). The Ninth Circuit has held that police intervention "at every step" of an eviction can render the eviction process state action, particularly where "the police [are used] to facilitate an illegal repossession." *Id.*, at 384–85 (cleaned up).

Here, the undisputed evidence before the court on summary judgment establishes that on June 5, 2014, prior to the eviction of the residential plaintiffs, defendant Armstrong sent a "Notice of Public Nuisance Activity" to plaintiff Howard Jones. (DSUF at ¶ 31.) This notice informed plaintiff Howard Jones that "nuisance activities" were occurring at the subject property and had been ongoing for some time. (*Id.*) The notice included a request that the owners contact defendant Armstrong to schedule a meeting with the City Attorney's Office to create an abatement plan. (*Id.* at ¶ 35.) On July 12, 2014, defendant Armstrong sent an email to the property manager of 1933 Los Robles Boulevard and plaintiff Howard Jones in which Armstrong stated, "I certainly can't make owners evict tenants. But I can tell you from my experience that evictions have solved many problems similar to what we are dealing with on your property." (Doc. No. 104-3 at 233.) On August 18, 2014, defendant Armstrong issued an administrative penalty pursuant to the Nuisance Code against plaintiff Howard Jones due to "continued

occurrences of criminal activity[.]" (DSUF at ¶¶ 36, 37.)  A review of the evidence before the court on summary judgment reveals that the residential plaintiffs were removed from the subject property as follows:

- Plaintiff Leeper was evicted on November 3, 2014 through an unlawful detainer action for non-payment of rent (Doc. No. 99-2 at 6; DSUF at ¶ 6);

- Plaintiff Oldham was evicted on November 17, 2014 (and ordered to vacate the subject property no later than December 5, 2014) through an unlawful detainer action (Doc. No. 99-2 at 15–17; DSUF at ¶ 8);

- Plaintiff Medley did not sign a rental agreement with plaintiff Howard Jones and moved out of the subject property when "a sheriff" informed him that he must leave the property (DSUF at ¶¶ 10, 14); and

- There is no evidence before the court on summary judgment regarding when or under what circumstances plaintiff Ward was removed from the subject property (DSUF at ¶¶ 15, 16.)

There is no evidence before the court on summary judgment that police assistance was requested at any point to facilitate the eviction of the residential plaintiffs.[5]  (DSUF at ¶ 49.)

Plaintiffs' theory of liability underpinning their § 1983 claims is difficult to discern.  In their SAC, plaintiffs contend that defendants "proximately caused the ejectment of Plaintiffs from their home without notice, opportunity to be heard[,] or due process." (Doc. No. 73 at ¶ 81.) However, plaintiffs admit in opposition to defendants' motion for summary judgment that they are not arguing "that the eviction proceedings were substantively wrongful" nor seeking "to relitigate the lawfulness of the evictions themselves." (Doc. No. 104 at 14–15.)  Rather, based on

_____

[5] Plaintiffs argue that whether police assistance was requested by the property manager, Chris Boley, is irrelevant to resolution of the pending motions for summary judgment.  (Doc. No. 104-1 at 14.)  They do not dispute either that Mr. Boley did not recall making such a request nor that there is no evidence of such a request having been made.  To the extent that plaintiffs are instead objecting that the evidence in support of this fact is irrelevant, "the question is whether there are genuine disputes of *material* fact, and accordingly, the relevance inquiry inheres throughout the determination of summary judgment motions." *Relevant Grp., LLC v. Nourmand*, No. 2:19-cv-05019-ODW-KS, 2022 WL 2916860, at *2 (C.D. Cal. July 25, 2022).  Accordingly, plaintiffs' objection is overruled.

their motion for summary judgment, it appears that plaintiffs are instead contending that defendant Armstrong failed to provide them certain required procedures that they were entitled to under the Nuisance Code, such as providing written notice to the residential plaintiffs of the citation issued to plaintiff Howard Jones, which they contend indirectly caused plaintiff Howard Jones to pursue lawful eviction proceedings against the residential plaintiffs. (Doc. No. 100-1 at 21; *see also* PSUF at ¶¶ 10, 11, 28, 29.)

Plaintiffs argue that defendant Armstrong's actions constitute "state action" within the meaning of § 1983 because defendant Armstrong actively encouraged their eviction. (Doc. No. 104 at 10–12.) This argument fails for two reasons. First, though "using the police to facilitate an *illegal* repossession" may constitute state action, "a private repossession pursuant to a state statutory provision is not state action." *Howerton*, 708 F.2d at 384 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–66 (1978)); *see also Villegas*, 541 F.3d at 957 ("[I]t is generally not a constitutional violation for a police officer to enforce a private entity's rights."); *see generally Neher v. Davis*, No. 2:25-cv-00482-DC-CSK (PS), 2025 WL 448937, at *4 (E.D. Cal. Feb. 10, 2025) ("Federal courts have consistently held a private party's pursuit of state court unlawful detainer proceedings does not constitute state action."). Because plaintiffs do not argue that the evictions were unlawful, those evictions cannot constitute state action attributable to defendant Armstrong.

Second, viewing the evidence in the light most favorable to plaintiffs, defendant Armstrong's actions prior to the evictions of the residential plaintiffs were: (1) sending a notice of violation of the nuisance code; (2) assessing an administrative penalty related to a violation of the nuisance code; and (3) sending an email from defendant Armstrong to plaintiff Howard Jones observing that "evictions have solved many problems similar to what we are dealing with on your property." (Doc. No. 104-3 at 233.) Nonetheless, it is undisputed that defendant Armstrong did not identify any "specific abatement measures[.]" (PSUF at ¶ 34.) Plaintiffs argue that defendant Armstrong's use of an administrative penalty amounts to "coercing evictions." (Doc. Nos. 100-1 at 21; 104 at 11) ("The City had a goal, issued threats in the form of penalties up to $25,000, applied pressure in requiring proof of eviction, and rescinded penalties only after evictions

10

occurred.  That is involvement 'every step of the way.'"); *see also Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 ("In order for private conduct to constitute governmental action, 'something more' must be present.  Courts have used four different factors or tests to identify what constitutes 'something more':  (1) public function, (2) joint action, (3) *governmental compulsion or coercion*, and (4) governmental nexus.") (internal citations omitted) (emphasis added) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 938–39 (1982)).

The Supreme Court has had occasion to address whether governmental action in regulating the decisions of a nursing home to discharge or transfer Medicaid patients was coercive and the court's reasoning in that case is instructive here:

> [R]espondents' complaint is about nursing home decisions to discharge or transfer, not to admit, Medicaid patients.  But we are not satisfied that the State is responsible for those decisions either.  The regulations cited by respondents require SNF's and HRF's "to make all efforts possible to transfer patients to the appropriate level of care or home as indicated by the patient's medical conditions or needs[.]"  The nursing homes are required to complete patient care assessment forms designed by the State and "provide the receiving facility or provider with a current copy of same at the time of discharge to an alternate level of care facility or home."
>
> These regulations do not require the nursing homes to rely on the forms in making discharge or transfer decisions, nor do they demonstrate that the State is responsible for the decision to discharge or transfer particular patients.  Those decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State.
>
> Respondents next point to regulations which, they say, impose a range of penalties on nursing homes that fail to discharge or transfer patients whose continued stay is inappropriate.  One regulation excludes from participation in the Medicaid program health care providers who "[f]urnished items or services that are substantially in excess of the beneficiary's needs.  The State is also authorized to fine health care providers who violate applicable regulations.  As we have previously concluded, however, those regulations themselves do not dictate the decision to discharge or transfer in a particular case.  Consequently, penalties imposed for violating the regulations add nothing to respondents' claim of state action.

*Blum v. Yaretsky*, 457 U.S. 991, 1009–10 (1982).

Similarly, here, the notice issued by defendant Armstrong indicated only that plaintiff Howard Jones had "a legal duty to abate the nuisance activity occurring on the property" and that its failure to do so would cause "the City of Sacramento [to] take further enforcement action[.]"

11

(Doc. No. 104-3 at 12.)  That notice went on to request, but not require, plaintiff Howard Jones to contact defendant Armstrong to "schedule a meeting with the City Attorney's Office to *come up with a solution* to this ongoing nuisance." (*Id.*) (emphasis added).  The administrative penalty subsequently issued on August 18, 2014, did not recommend or require any particular action. (Doc. No. 99-2 at 96.)  Neither of these actions support the conclusion that the state required that the residential plaintiffs be evicted.  Plaintiffs have come forward with some evidence on summary judgment that defendant Armstrong suggested their eviction in the form of his email wherein he notes generally that evictions "have solved many problems[.]"  However, another district court has found that government officials' letters encouraging property owners to "settle the dispute, mediate, [or] evict" and a police officer encouraging a property owner to obtain a court-ordered eviction were insufficient to constitute state action because those actions did not "cross[] the line into active intervention and aid in the taking of the property."  *Ho v. City of Long Beach, Pub. Works*, No. 2:19-cv-09430-DOC-KES, 2022 WL 17682677, at *22-23 (C.D. Cal. Oct. 24, 2022), *report and recommendation adopted sub nom. Ho v. City of Long Beach*, 2022 WL17670401 (C.D. Cal. Dec. 13, 2022).  Similarly, here, the court concludes that defendant Armstrong's email and the subsequently imposed administrative penalty were not sufficiently coercive to constitute active intervention or aid in the taking of the apartments at issue because there is no evidence that defendant Armstrong ever recommended eviction.

Rather, the evidence before the court on summary judgment indicates the decision to evict ultimately depended on the exercise of plaintiff Howard Jones' own judgment regarding their leasing practices.  Because those decisions depended upon business judgments made by a private party, and those business judgments were not based on government-set standards, the evictions cannot constitute state action.  *See Blum*, 457 U.S. at 1008 (holding that decisions by private parties based on professional standards did not constitute state action).  Indeed, the Ninth Circuit has recently emphasized that coercion is not established where the government does not pressure a private party into taking a particular action.  *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 760 (9th Cir. 2024) ("Like the 'generalized federal concern[s]' in [*Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498 (9th Cir. 1996)], those statements do not establish coercion because they

12

do not support the inference that the government pressured Meta into taking any specific action with respect to speech about vaccines.") (collecting cases), *cert. denied*, 145 S. Ct. 2846 (2025); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 193–94 (2024) (holding that the combination of a private meeting between a government official with an insurance company directing the party to comply with government guidance or risk enforcement action and guidance explicitly directing regulated insurance companies to "discontinue their arrangements with the NRA" was coercive in nature).

Based on the above, the court concludes that defendants have shown there is no genuine dispute of material fact regarding whether defendant Armstrong's actions related to the residential plaintiffs' eviction constitute state action actionable under § 1983.  The court observes that the claims for violation of the Fourth Amendment and the Fourteenth Amendment Due Process Clause advanced by the residential plaintiffs are based exclusively on their eviction.  (S*ee* Doc. Nos. 73 at ¶ 81; 100-1 at 20 (describing their Fourth Amendment claims only in reference to evictions).)  Similarly, the § 1983 claim for violation of the Equal Protection Clause asserted by the residential plaintiffs appears to be predicated on defendant Armstrong purportedly compelling their eviction through the assessment of penalties.[6]  (*See* Doc. Nos. 73 at ¶ 98; 104 at 19–20 (describing their Equal Protection Clause claim only in reference to plaintiff Ward's eviction without evidence that plaintiff Ward was evicted).)  "Where a claim is presented under either § 1983 or the Fourteenth Amendment, plaintiffs must show, as a threshold matter, that state action is involved." *Nodleman v. Aero Mexico*, 528 F. Supp. 475, 492 (C.D. Cal. 1981) (applying the state action test to the plaintiffs' Equal Protection Clause claim); *Roberts v. Shriners Hosps. for Child.*, No. 2:23-cv-00295-TOR, 2024 WL 5517091, at *3–8 (E.D. Wash. Feb. 8, 2024)

---

[6] Plaintiffs' Equal Protection Clause claim is entirely unclear in this regard.  In their SAC plaintiffs fail to clearly allege what purportedly disadvantaged group was targeted by defendant Armstrong's conduct nor whether the residential plaintiffs are members of that group.  (Doc. No. 73 at ¶¶ 95–100.)  In their opposition to defendants' pending motion plaintiffs also fail to clearly identify a disadvantaged group that the residential plaintiffs are members of, appearing to alternatively propose "domestic violence victims" or generally persons that make emergency 911 calls as the targeted group.  (Doc. No. 104 at 19–21.)  In their cross-motion for summary judgment plaintiffs also fail to discuss their Equal Protection Clause claim.  (Doc. No. 100-1.)

(dismissing an Equal Protection Clause claim due to the failure to allege state action).  Therefore, the court will grant defendant Armstrong's motion for summary judgment in his favor as to all § 1983 claims brought by the residential plaintiffs.

>    2.    Defendants City of Sacramento and City of Sacramento Police Department

Defendants argue that there is no genuine dispute of material fact regarding whether defendants City of Sacramento and City of Sacramento Police Department ("the municipal defendants") were the moving force behind the evictions of the residential plaintiffs.  (Doc. No. 99-1 at 18–19.)  Plaintiffs' arguments regarding whether a policy of the municipal defendants was the moving force behind the evictions of the residential plaintiffs mirror their argument that defendant Armstrong was acting under color of state law, namely that the encouragement of the issuance of administrative citations by the municipal defendants caused the residential plaintiffs to be evicted.  (Doc. No. 104 at 10–11.)

The court first notes that, though it has already concluded that defendant Armstrong's actions did not constitute state action, the inquiry does not end there.  *Alter ex rel. Alter v. County of San Diego*, 635 F. Supp. 3d 1048, 1057 (S.D. Cal. 2022) ("Defendant's argument that Plaintiff's allegations against public defenders do not constitute state action . . . fails.  . . . Plaintiff alleges a *Monell* claim against the County of San Diego for alleged 'practices and customs' and 'failure to properly train and/or supervise the attorneys.'  The relevant inquiry is whether Plaintiff has adequately specified administrative practices and customs and/or training (or lack thereof) by the public defender's office that allegedly caused Plaintiff's constitutional violations.") (cleaned up); *see also McGowan v. County of Kern*, No. 1:15-cv-01365-DAD-SKO, 2018 WL 2734970, at *12 (E.D. Cal. June 7, 2018) ("Policies of inaction may be alleged solely against a municipality, *regardless* of whether any individual employees of that municipality are liable.") (emphasis added).  Instead, the court must determine whether there is evidence before it that any policy, custom, or training caused the evictions of the residential plaintiffs.  *See Escalante v. City and County of Honolulu*, No. 17-cv-00578-JMS-RLP, 2018 WL 1748110, at *4–6, *5 n.6 (D. Haw. Apr. 11, 2018) (discussing Ninth Circuit and out-of-circuit precedent regarding *Monell* claims based on the actions of off-duty police officers, expressing skepticism that such actions can give

14

rise to a cognizable *Monell* claim, but ultimately dismissing the plaintiff's *Monell* claim on the grounds that the defendant's actions were not alleged to be the moving force behind the plaintiff's injury).

"A plaintiff seeking to establish municipal liability must demonstrate . . . that the government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation he suffered.  To meet this requirement, the plaintiff must show both causation-in-fact and proximate causation." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (internal citations and quotation marks omitted).  Plaintiffs appear to advance two separate theories of *Monell* liability:  (1)  the municipal defendants had an unwritten policy of using administrative penalties to encourage eviction; and (2) the municipal defendants failed to train officers regarding enforcement of the Nuisance Code and officers therefore treated eviction as a default remedy.  (Doc. No. 100-1 at 22–27.)  However, as discussed above, there is no evidence before the court on summary judgment that defendant Armstrong encouraged evictions or that the municipal defendants took any action to encourage the eviction of the residential plaintiffs here apart from defendant Armstrong's actions.  In opposition to defendants' motion for summary judgment, plaintiffs present the sworn declaration of property manager Christopher Boley who states that his decision to evict "was entirely motivated" by the penalties levied by defendant Armstrong.  (Doc. No. 104-5 at ¶ 7.)  However, plaintiffs have not provided any authority suggesting that the action of a private party, not ordered by a state actor, in response to the imposition of a penalty is somehow attributable to a state actor under § 1983, and the court has not identified any such authority.

The district court's decision in *Ho* is instructive in this regard.  There, the court considered whether a municipal resolution and grant was the moving force behind private parties removing the plaintiff's personal property from an alleyway:

> It is true that the Neighbors' removal of Plaintiff's personal property from the alley was, at least in part, *an attempt to comply* with the City's condition that a wall be built down the center of the alley. Although the resolution vacating the public right-of-way itself does not contain this condition, the City states that it was imposed with the City's grant of additional property (half the alley) to the two adjoining owners.  The Neighbors and individual City Defendants

15

also appear to have believed this was a condition the city could enforce. [(citing evidence that one of the defendant officers told the neighbor defendants that though the city could have built the wall down the alley "[t]he hope was that the homeowners would take care of it.")]  . . .  However, the summary judgment evidence does not support a finding that this condition was the moving force behind the constitutional violation.  The City had not taken any steps to enforce this condition in almost 10 years. . . . There is no evidence that the Neighbors' desire to build a wall on the property line was a response to any threat by the City to take the land back or otherwise enforce the condition.

*Ho*, 2022 WL 17682677, at \*30 (cleaned up) (emphasis added).  Similarly, here, there is no evidence before the court on summary judgment suggesting that the municipal defendants threatened plaintiff Howard Jones in any way for failing to evict the residential plaintiffs.[7]

Moreover, the residential plaintiffs' theory is that the municipal defendants' customs and failure to adequately train caused defendant Armstrong to take certain actions which proximately caused their evictions.  But, as discussed above regarding defendant Armstrong's liability, his

---

[7] The court notes that, though plaintiffs fail to cite with any particularity evidence of a purported custom on the part of the municipal defendants in their motion or opposition brief, plaintiffs have presented substantial evidence that at least some officers of defendant City of Sacramento Police Department attempted to use administrative penalties to convince landlords to evict certain tenants.  Such evidence includes a statement from defendant Armstrong regarding another nuisance case that "[t]he goal [of the administrative penalties] is to get [the landlord] to evict this problem tenant."  (PSUF at ¶ 100.)  Another police official, Sergeant Pease, directed an officer to call a landlord "and encourage the eviction. . . . Now, if he plays hardball, explain to him that we have sufficient grounds to go forward with admin penalties."  (PSUF at ¶ 103.)  This evidence is sufficient to demonstrate a genuine issue of fact as to whether a custom of using the Nuisance Code to promote evictions existed and gives rise to a fair inference that such a custom may be the moving force behind defendant Armstrong's actions.  Indeed, this evidence would appear to support a conclusion that a plaintiff who was evicted following the active intervention by a police officer, such as the tenant who was the subject of Officer Pease's email directing a subordinate to require a landlord to "show proof that he has initiated eviction proceedings," may well be able to show that such a custom and practice was the moving force behind their eviction.  (Doc. No. 100-5 at 344.)  However, as discussed below, there is no evidence before the court on summary judgment that defendant Armstrong's actions proximately caused the evictions of the plaintiffs in this action.  Accordingly, even if the court were to consider the evidence (which plaintiffs failed to cite in their papers) and conclude that there is evidence of the existence of a custom or practice on the part of the municipal defendants, there is still no genuine issue of fact as to whether that custom or practice was the moving force behind the *evictions* of the residential plaintiffs here.  *See Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("There also must be a direct causal link between the policy or custom and the injury, and Anderson must be able to demonstrate that the injury resulted from a permanent and well settled practice.") (internal quotation marks omitted).

actions did not constitute active intervention and aid in the taking of the property and therefore cannot be the proximate cause of plaintiff Howard Jones' actions. *See Ho*, 2022 WL 17682677, at *22–23 (finding that an active recommendation by a police officer to pursue a court-ordered eviction was not the proximate cause of the neighbors evicting the plaintiff because the recommendation was not active intervention and aid in taking the property) (citing *Moore v. Carpenter*, 404 F.3d 1043, 1046 (8th Cir. 2005)). Similarly, the undisputed evidence before the court on summary judgment here does not support the conclusion that the actions of the municipal defendants proximately caused the evictions of the residential plaintiffs because those evictions were directly carried out and caused by the superseding action undertaken by plaintiff Howard Jones. *See Van Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Traditional tort law defines intervening causes that break the chain of proximate causation. This analysis applies in [§] 1983 actions. . . . [U]nforeseeable private acts br[eak] the chain of proximate cause[.]")

Accordingly, the court will grant the municipal defendants' motion for summary judgment to be entered in their favor with respect to the § 1983 claims brought by the residential plaintiffs against them.

### 3. Defendants Michael Benner and Sam Somers Jr.

Defendant Somers is sued in both his individual and official capacity. "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) ("When a county official . . . is sued in his official capacity, the claims against him are claims against the county."). Accordingly, the claim against defendant Sam Somers in his official capacity is redundant of plaintiffs' claims brought against the municipal defendants. Therefore, the court will grant defendants' motion for summary judgment to be entered in its favor with respect to the § 1983 claims brought by the residential plaintiffs against defendant Sam Somers in his official capacity.

/////

/////

/////

17

Defendants Benner[8] and Somers move for summary judgment in their favor on the grounds that their actions did not cause the evictions of the residential plaintiffs. (Doc. No. 99-1 at 18–19.) Plaintiffs argue that defendants Benner and Somers are liable for creating and showing a training video with unknown content to officers. (Doc. No. 104 at 22–27.) This purported training video is not before the court on summary judgment and the parties dispute whether the video was destroyed or merely could not be located following a diligent search by defendants. (PSUF at ¶ 120.)

"A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks omitted). "Under the latter theory, supervisor liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (cleaned up). Because the court concluded above that the purported failure of the municipal defendants to train was not the moving force behind the evictions of the residential plaintiffs, the court must similarly conclude that the actions of defendants Benner and Somers were not the moving force behind those evictions. *See Est. of Johnson v. County of Sacramento*, No. 2:23-cv-01304-KJM-JDP, 2024 WL 279137, at *3 (E.D. Cal. Jan. 25, 2024) (evaluating the individual supervisory liability and *Monell* liability claims brought by plaintiffs together) (citing *S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 (9th Cir. 2019)). Accordingly, the court will grant defendants' motion to enter summary

/////

---

[8] Plaintiffs do not identify in their SAC, their opposition to defendants' motion for summary judgment, or their own cross-motion for summary judgment whether defendant Benner is being sued in his official or individual capacity. Because defendant Michael Benner is an employee of the Sacramento City Attorney's Office, a claim against him in his official capacity would fail for the same reason the official capacity claim brought against defendant Somers fails. (Doc. No. 73 at ¶ 16.) Accordingly, the court considers an individual capacity claim against defendant Benner in this subsection of this order.

judgment in favor of defendants Benner and Somers as to the § 1983 claims brought by the residential plaintiffs against them.

**B.      Plaintiff Howard Jones' § 1983 Claims**

Defendants also move for summary judgment in their favor as to the § 1983 claims brought by plaintiff Howard Jones.  (Doc. No. 99-1.)  Specifically, defendants argue that the abatement of a nuisance does not constitute a taking under the Fifth Amendment and that plaintiffs cannot establish the existence of any triable issue of material fact regarding the Equal Protection claim brought by plaintiff Howard Jones.[9]  (*Id.* at 23–27.)  Plaintiffs fail to oppose defendants' motion in either regard.  Specifically, plaintiffs at no point in their opposition to defendants' pending motion refer to their takings clause claim, instead discussing an Equal Protection claim only with respect to the residential plaintiffs.  (Doc. No. 104 at 19–21.)  However, in plaintiffs' cross-motion for summary judgment, plaintiffs request summary judgment in their favor as to their takings clause claim relying on their conclusory argument that "direct[ing] an owner to evict residents and threaten[ing] monetary penalties" constitutes a taking. (Doc. No. 100-1 at 20.)  Plaintiffs do not refer to plaintiff Howard Jones' Equal Protection claim in their cross-motion for summary judgment.  The court will first address plaintiff Howard Jones' Equal Protection claim before addressing its takings clause claim.

       1.      <u>Equal Protection Claim</u>

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination,

---

[9] Defendants also argue that plaintiff Howard Jones Investments lacks the capacity to sue because it had already been dissolved at the time the SAC in this case was filed.  (Doc. No. 99-1 at 30–31.)  "Although at common law, a corporation ceased to exist upon its dissolution and thereafter could not sue or be sued, California no longer follows the common law.  Instead, under California Corporations Code [§] 2010(a), a dissolved corporation 'continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations[.]'"  *L A Ramco Jewelry Co. Inc. v. Chase Bank USA NA,* No. 12-cv-03925-GAF-FMO, 2012 WL 13013416, at *2 (C.D. Cal. July 10, 2012) (internal citations omitted).  Accordingly, the court rejects defendants' standing argument.

19

whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation marks omitted).

In their SAC plaintiffs appear to assert that defendant Armstrong's enforcement of the Nuisance Code and, more broadly, enforcement of the Nuisance Code by all defendants, disproportionately impacted "property owners who rent to individuals who lack wealth[.]" Nonetheless, plaintiffs do not identify any provision of the Nuisance Code which creates a suspect classification. "Where, as here, the challenged governmental policy is 'facially neutral,' proof of disproportionate impact on an identifiable group, such as evidence of 'gross statistical disparities,' can satisfy the intent requirement where it tends to show that some invidious or discriminatory purpose underlies the policy." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009) (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)). However, plaintiffs point to no evidence before the court on summary judgment that "property owners who rent to individuals who lack wealth" have been disproportionately impacted by enforcement of the Nuisance Code, either direct or statistical. Accordingly, the court must conclude that there is no genuine dispute of material fact regarding whether defendants have taken any actions with the necessary intent to discriminate against plaintiff Howard Jones on the basis of membership in a purported class. Moreover, because plaintiffs have not established a genuine dispute of material fact regarding an Equal Protection Clause violation, plaintiffs also cannot establish a genuine dispute of material fact regarding *Monell* liability based on such a violation. *Gonzales v. City of Los Angeles*, No. 11-cv-09631-GHK-JC, 2013 WL 12642051, at *6 (C.D. Cal. May 7, 2013); *see also Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("Because Demarest has failed to show that he suffered any underlying constitutional violation, Demarest's ninth cause of action, asserting municipal liability for such violations, necessarily fails.").

Therefore, the court will grant defendants' motion for summary judgment in its favor as to plaintiff the § 1983 claim for violation of the Equal Protection Clause brought by plaintiff Howard Jones.

### 2. Takings Clause

Defendants argue that the Takings Clause is not implicated by the imposition of penalties for the purpose of nuisance abatement. (Doc. No. 99-1 at 23–26.) Plaintiffs appear to contend in conclusory fashion that the penalty imposed in this instance of $4,999.99 was so onerous that it commandeered plaintiff Howard Jones' property rights and constituted a taking. (Doc. No. 100-1 at 20.)

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). "The Supreme Court has articulated two categories of takings under the Fifth Amendment. Where the government 'physically acquires private property for a public use,' a 'per se' taking has occurred. But where the government 'instead imposes regulations that restrict an owner's ability to use his own property,' courts 'appl[y] the flexible test developed in *Penn Central*.'" *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 833 (9th Cir. 2025) (internal citations omitted) (quoting *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–49 (2021)). Here, plaintiffs do not argue that the apartment complex at issue was seized by defendants nor that plaintiff Howard Jones lost "all economically beneficial use" of that property. *See Williams v. Alameda County*, 642 F. Supp. 3d 1001, 1015 (N.D. Cal. 2022) ("Similarly, a *per se* taking occurs when the government requires a property owner 'to sacrifice all economically beneficial uses in the name of the common good.") (emphasis removed) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)). Accordingly, the court treats plaintiffs' argument as asserting that a penalty imposed to abate a nuisance falls within the second category of regulatory action.

Plaintiffs cite no authority to support the contention that the imposition of an administrative penalty for failure to abate a nuisance constitutes a taking, and the court has identified none. The court finds the following approach instructive on this point:

Second, even if the City Defendants had initiated formal nuisance abatement proceedings, it is well-established that "the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place." *Cedar Point*, [594 U.S. at 160]. Plaintiff's opposition repeats on several occasions that Plaintiff's Lounge was not responsible for the alleged nuisance activities in the Parking Lot. This point may be relevant to a nuisance abatement action but is less pertinent to a § 1983 action for regulatory takings. The Takings Clause does not "require compensation whenever the State asserts its power to enforce" nuisance abatement. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 492 (1987). This principle applies even if the City Defendants were mistaken as to the source of the nuisance. . . . In short, Plaintiff has failed to demonstrate why the City Defendants' nuisance abatement efforts constitute a regulatory taking, as opposed to a regular exercise of the City's police power.

*Muhmoud v. City of San Jose,* No. 5:20-cv-08808-EJD, 2023 WL 6165696, at *11 (N.D. Cal. Sept. 20, 2023). "Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Fouts v. County of Clark*, 76 Fed. App'x 825, 827 (9th Cir. 2003) (internal quotation marks omitted) (quoting *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n.22).

Therefore, the court concludes that defendants have shown there is no genuine dispute of material fact regarding whether the administrative penalty imposed upon plaintiff Howard Jones constituted a regulatory taking without compensation under the takings clause. Accordingly, the court will grant defendants' motion for summary judgment in its favor with respect to the § 1983 claim for violation of the takings clause brought by plaintiff Howard Jones.

## C. Tortious Interference With Contract

Defendants next move for summary judgment in their favor as to plaintiffs' claim for tortious interference on the grounds that plaintiffs have failed to comply with the Government Claims Act. (Doc. No. 99-1 at 29–30.) Specifically, defendants argue that plaintiffs failed to submit any government tort claim to the City of Sacramento prior to the filing of this lawsuit. (*Id.*) Plaintiffs concede that they failed to file such a claim, but argue without authority that this requirement should be waived here because they had been improperly denied due process by defendants' actions and, accordingly, defendants should be "estopped" from requiring plaintiffs to comply with the Government Claims Act. (Doc. No. 104 at 27–28.)

22

"Under the Government Claims Act, no suit for damages may be brought against a public entity until a written claim has been presented to it and either acted upon or rejected." *Williams v. County of Sacramento*, No. 2:19-cv-02345-TLN-CSK, 2025 WL 253945, at *3 (E.D. Cal. Jan. 21, 2025) (citing Cal. Gov't Code § 945.4). "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." *DiCampli-Mintz v. County of Santa Clara*, 55 Cal. 4th 983, 991 (2012) (internal quotation marks omitted). "Compliance with the claims statutes is mandatory and failure to file a claim is fatal to the cause of action." *City of San Jose v. Super. Ct.*, 12 Cal. 3d 447, 454 (1974) (cleaned up). However, "[i]t is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 445 (1989). "Under California law, equitable estoppel requires that:  (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury." *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051–52 (9th Cir. 2008). Finally, and most importantly here, to assert equitable estoppel, "the plaintiff must point to some fraudulent concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Id.* at 1052 (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)).

Here, plaintiffs argue in conclusory fashion that defendants failing to provide notice of nuisance abatement proceedings to the residential plaintiffs prevented them from learning of the facts underlying their causes of action. (Doc. No. 104 at 28.) There is simply no evidence before the court on summary judgment of any affirmative action taken by defendants to conceal such facts from the residential plaintiffs. Because plaintiffs do not dispute that they have failed to comply with the claim presentation requirement of the Government Claims Act, plaintiffs' claim

/////

23

for tortious interference with contract is barred.  Accordingly, the court will grant defendants' motion for summary judgment in its favor with respect to plaintiffs' fourth cause of action.

**CONCLUSION**

For the reasons above,

1.    Defendants' motion for summary judgment (Doc. No. 99) is GRANTED in its entirety;

2.    Plaintiffs' cross-motion for summary judgment (Doc. No. 100) is DENIED;

3.    The Clerk of the Court is DIRECTED to enter judgment in favor of defendants; and

4.    The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:    **February 12, 2026**                    _____
                                                DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE